IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALICIA FERNANDEZ,

    Plaintiff,

v.                                                                                           Civ. No. 24-329 KG/SCY

JOSEPH ROMERO and
JOHN DOES 1–10,

    Defendants.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Joseph Romero's Motion to Dismiss, (Doc. 2), filed on April 5, 2024.[1] Plaintiff Alicia Fernandez filed her response, (Doc. 9), on May 7, 2024.[2] Defendant filed his reply, (Doc. 11), on May 20, 2024. The Court ordered supplemental briefing on February 12, 2025. (Doc. 14). The parties filed their supplemental briefs, (Docs. 15, 16), on February 26, 2025. Having considered the briefing and the applicable law, the Court grants the Motion, in part, dismissing the federal claim, and remands Plaintiff's state-law claims to state court.

---

[1] The Court notes that Defendant failed to include the required recitation of a good-faith request for concurrence in his Motion. Such failure is grounds to summarily deny his Motion. D.N.M.LR-Civ. 7.1. While the Court will, nonetheless, consider Defendant's Motion on the merits, it strongly encourages Defendant's counsel to become familiar with the District of New Mexico's Local Rules.

[2] Plaintiff's Response was filed more than a month after Defendant filed his Motion. The District of New Mexico's Local Rules require a response to be served and filed with fourteen calendar days after service of the motion. D.N.M.LR-Civ. 7.4(a). Local Rule 7.4(a) also details the procedure for requesting an extension of the filing deadline. Plaintiff did not request an extension, nor did she provide any explanation as to her late filing. Nonetheless, the Court will consider Plaintiff's Response. As with Defendant's counsel, the Court strongly encourages Plaintiff's counsel to become familiar and follow the local rules.

1

I.      *Background*[3]

The facts giving rise to this case stem from a math tutoring session at the University of New Mexico (UNM) Taos campus. On or about March 15, 2019, Plaintiff, a UNM-Taos student, was studying in the math lab at the UNM-Taos campus. (Doc. 1-1) at 1–2. While there, Plaintiff received tutoring support from Defendant, a student math tutor. *Id.* at 2. At some point, late in the tutoring session, Defendant began talking about having sex in public places, and asked Plaintiff if she would ever consider having sex in a public place. *Id.* Plaintiff responded, "No." *Id.* Defendant then went further, asking Plaintiff if she wanted "to have sex with him right there in the math lab." *Id.* Plaintiff again responded, "No." *Id.* Defendant continued cajoling Plaintiff, telling her that there were no cameras in the math lab, so no one would see. *Id.* Defendant then asked Plaintiff if she was "sure" she did not want to have sex with him. *Id.*

Plaintiff repeatedly refused these uninvited and unwanted sexual advances. Defendant's advances made Plaintiff feel extremely uncomfortable. *Id.* Still, Defendant kept asking Plaintiff to engage in sexual activities. *Id.* It appears Defendant asked Plaintiff to engage in sexual activities with him at least eight times, and every time, Plaintiff said, "No." *Id.* Defendant's unwillingness to acknowledge Plaintiff's answers made her feel unsafe. *Id.* As a result, Plaintiff left the math lab despite being unprepared for her upcoming final exam. *Id.* As she was leaving, Defendant asked if she was sure she was done tutoring. Plaintiff responded, "Yes." *Id.* Defendant then told Plaintiff that if she ever wanted to have sex with him, she could find him in

---

[3] The Court takes all well-pled facts alleged in Plaintiff's Second Amended Complaint, (Doc. 1-1) at 1, as true and views them in the light most favorable to her, drawing all reasonable inferences from the facts in her favor. *Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1232 (10th Cir. 2022).

the math lab, where he is often alone. *Id.* The next day, Defendant sent Plaintiff a text message that included a sexual image. *Id.*

In the weeks after, Plaintiff had some, but not much, interaction with Defendant. Plaintiff did not return to the math lab for almost two months for fear of seeing Defendant. *Id.* at 3. It was only after eight weeks that Plaintiff went back to the math lab for the first time, but she intentionally sat by her teacher and asked her for tutoring. *Id.* Unaware of what had previously transpired between Plaintiff and Defendant, Plaintiff's teacher referred Plaintiff to Defendant for tutoring. *Id.* This made Plaintiff extremely uncomfortable. *Id.* When Defendant sat next to her, Plaintiff asked him one question and pretended she understood in order to end her communication with Defendant. *Id.*

Plaintiff next saw Defendant before one of her classes in the hallway on campus. *Id.* Defendant said hello to Plaintiff, and Plaintiff "just walked back to her classroom." *Id.* While waiting for class to begin, Defendant walked into the classroom, despite not being a student in the class, and started talking with Plaintiff's professor in front of her. *Id.* at 4. Plaintiff felt Defendant was "purposely making himself present," which made Plaintiff uncomfortable and scared. *Id.*

Plaintiff indicates that the last time she saw Defendant was "in the halls while she was waiting for her ride." *Id.* When she noticed him coming toward her, she immediately put in headphones and started doing homework. *Id.* Defendant then sat close to her, trying to get her attention. *Id.* At some point during this encounter, Defendant told Plaintiff to go see him on Fridays, when no one would be in the math lab. *Id.* This encounter, like the ones before, caused Plaintiff to feel extremely upset. *Id.*

3

These experiences, along with UNM's inaction, caused Plaintiff extreme distress. She began having medical issues with her stomach—finding blood in her bowels—and struggled with anxiety, post-traumatic stress disorder, trauma, and depressive symptoms. *Id.* at 5. She also struggled at school. *Id.* at 4–5. Her sleeping and eating were affected. *Id.* She would have nightmares of these events and wake up crying and throwing up due to her distress. *Id.* at 5. Because of all of this, Plaintiff brings this lawsuit against Defendant, alleging a violation of her constitutional right to equal protection, assault, and intentional infliction of emotional distress (IIED). *Id.* at 5–6.

II.     Legal Standard

   A. *Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion to dismiss, the court does not "weigh potential evidence that the parties might present at trial, but to assesses whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *VDARE Found v. City of Colorado Springs*, 11 F.4th 1151, 1158 (10th Cir. Aug. 23, 2021) (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)).

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility" if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Twombly, 550 U.S. at 556). "A plaintiff must allege sufficient facts to 'nudge[] [his]

claims…across the line from conceivable to plausible.'" *VDARE Found.*, 11 F.4th at 1158 (alterations in original) (quoting *Iqbal*, 556 U.S. at 680).

In conducting the Rule 12(b)(6) analysis, courts "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1159 (quoting *Iqbal*, 556 U.S. at 679). "When there are well-pleaded factual allegations" remaining, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. While "'[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context,'…the court need not accept 'conclusory allegations without supporting factual averments.'" *VDARE Found.*, 11 F.4th at 1159 (alteration in original) (internal citations omitted).

    B.  *Motion to Dismiss After Defendant Asserts Qualified Immunity*

When a defendant raises qualified immunity at the motion to dismiss stage, courts engage in a two-part analysis. *Frey v. Town of Jackson, Wyo.*, 41 F.4th 1223, 1232 (10th Cir. 2022). Courts must determine whether: (1) the plaintiff plausibly alleged a violation of a constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.* (citing *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)). "Courts may address these two inquiries in any order." *Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025). "But if the plaintiff fails to satisfy either prong, a court must grant qualified immunity." *Id.* (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

A right is clearly established when Tenth Circuit or Supreme Court precedent supply materially similar facts to the case at issue. *Shepard v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022) (citing *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017)). This does not require a plaintiff to "engage in a scavenger hunt for a prior case with identical facts." *Id.* (citing

*Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)). Instead, the question is whether existing law provides fair warning to a defendant. *Id.* (citing *Estate of Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)).

III. *Discussion*

With abovementioned legal standards in mind, the Court now addresses Defendant's Motion. The Court begins by addressing Defendant's argument that he is entitled to qualified immunity on Plaintiff's Fourteenth Amendment Equal Protection claim.

    A. *Plaintiff's Section 1983 Equal Protection Violation Claim*

"The Fourteenth Amendment's Equal Protection Clause prohibits a state actor from engaging in discriminatory conduct." *Shepard*, 55 F.4th at 816 (citing U.S. Const. amend. XIV, § 1). And under the Tenth Circuit's jurisprudence, sexual harassment constitutes sex discrimination. *Id.* at 817 (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989)). Therefore, when a state actor commits sexual harassment, he violates the Fourteenth Amendment's Equal Protection Clause. *Id.* A state actor commits sexual harassment when he "abuses his governmental authority to further his own sexual gratification." *Id.* (citing *Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999) (concluding state agent's attempts to obtain sexual favors in exchange for favorable permit application and compliance determinations amount to abuse of his governmental authority for the purpose of this own sexual gratification and thus violate the Equal Protection Clause).

Determining whether a state actor commits an Equal Protection violation turns on "the nature of the relationship between the plaintiff and the defendant, and not the specific harassing conduct." *Id.* at 818 (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992) (concluding liability for sexual harassment under the Equal Protection Clause is predicated on

6

some governmental authority that the defendant has over the plaintiff). Therefore, it is "the nature and degree of authority a defendant has over a plaintiff [that] informs whether the law is clearly established." *Id.*

In the Tenth Circuit, cases finding § 1983 sexual-harassment-based constitutional violations "involved a power imbalance created by the alleged harasser's governmental authority." *Id.* at 819. These cases include claims: (1) subordinates have brought against their supervisors in government positions, (2) citizens have brought against a state agent when the state agent exercised governmental authority over them, and (3) claims students have brought against teachers. *Id.* at 818–19 (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989); *Lankford v. City of Hobart*, 27, F.3d 477, 480 (10th Cir. 1994); *Sh.A ex rel. J.A. v. Tucumcari Mun. Schs.*, 321 F.3d 1285, 1289 (10th Cir. 2003)).

In this case, Plaintiff alleges Defendant sexually harassed her in violation of her Equal Protection rights. (Doc. 1-1). She argues, in her Response to Defendant's Motion, that Defendant had authority over her because he was employed by UNM, and he was her tutor. (Doc. 9) at 5. In his Motion, Defendant argues he is entitled to qualified immunity because "the case law available at the time did not clearly establish that his authority as a student-tutor and conduct in merely offering sex would constitute an Equal Protection violation." (Doc. 2) at 5. Although the Court agrees the law was not clearly established, the Court points out that Defendant was not "merely offering sex." The allegations—taken as true for purposes of a 12(b)(6) motion—clearly describe Defendant's attempt to pressure Plaintiff to engage in sex with him. The Court appreciates the discomfort Plaintiff undoubtedly experienced in such a situation. Nonetheless, the Court determines Defendant is entitled to qualified immunity because the law was not clearly established.

Plaintiff cites one unpublished district court case to argue the law was clearly established. (Doc. 9) at 5 (citing *SH.A. v. Tucumcari Mun. Sch.*, 2001 U.S. Dist. LEXIS 27402, *13–14 (D.N.M.). But Plaintiff's attempt to analogize this case to *Tucumcari Mun. Sch.* is unavailing. In that case, the relationship was between the defendant, who was a teacher, and plaintiffs, who were fifth and sixth grade students. 2001 U.S. Dist. LEXIS, at *3–4. Here, the relationship is between a UNM-employed student-tutor and a fellow student. Clearly, nature and degree of authority a teacher has over fifth and sixth grade children is not analogous to the nature and degree of authority a student-tutor has over a fellow student. Nothing in Plaintiff's Complaint allows this Court to infer that whatever authority Defendant had as a student-tutor created a meaningful power imbalance between Plaintiff and himself. Consequently, the Court concludes the law was not clearly established, and Defendant is entitled to qualified immunity on the Equal Protection violation claim.

Having concluded that Defendant is entitled to qualified immunity on Plaintiff's federal claim, the Court now addresses whether this claim should be dismissed with or without prejudice. Plaintiff requests that she should be allowed to amend her Complaint. (Doc. 16) at 2–3. Plaintiff, however, fails to provide any factual allegations in support for her request that she be granted leave to amend. *See Bangerter v. Roach*, 2011 WL 2160496 (D. Utah), aff'd, 467 F. Appx 787, 789 (10th Cir. 2012) ("[A] plaintiff seeking to amend a complaint must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment." (internal quotation marks and citation omitted)). Instead, Plaintiff asks she be allowed to amend if the Court concludes her Complaint is deficient. (Doc. 16) at 3. And although leave to amend should be freely given when justice requires, Plaintiff's request is insufficient. *See Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir. 1989) (affirming dismissal of

plaintiffs' complaint for failure to state a claim and rejecting plaintiffs' argument the court erred by not addressing their request to amend where plaintiffs included such request only as an alternative form of relief in their opposition to defendants' motion)).

To be clear, Plaintiff has cited no case clearly holding that sexual harassment by a student-tutor against another student is an actionable Equal Protection violation. Because the case law and factual allegations do not—and cannot—establish a viable Equal Protection violation claim, the Court determines that amending the complaint would be futile. Thus, the Court dismiss Plaintiff's Equal Protection violation claim with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a clam…and granting leave to amend would be futile.").

Finally, this Court is dismissing all federal claims in this case. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, and will remand this proceeding to state court for adjudication of the remaining state-law claims. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quoting *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998))).

IV.   Conclusion

For the reasons discussed above, the Court grants, in part, Defendant's Motion to Dismiss, (Doc. 2). The Court dismisses Plaintiff's Equal Protection violation claim with prejudice. Because the Court dismisses the federal claim, it remands Plaintiff's remaining state-law claims back to the Eighth Judicial District Court, County of Taos, State of New Mexico.

/s/ KENNETH J. GONZALES[4]
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.